IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABDUL MATIN                                          )
     Detainee,                                      )
     United States Naval Station at                 )
     Guantánamo Bay, Cuba;                          )
                                                    )
MOHAMMED YOUNIS,                                     )
     as Next Friend of Abdul Matin                  )
                                                    )
*Petitioners/Plaintiffs,*                            )          **PETITION FOR WRIT**
                                                    )          **OF HABEAS CORPUS**
     v.                                             )
                                                    )          No. _____
GEORGE W. BUSH,                                      )
     President of the United States                 )
     The White House                                )
     1600 Pennsylvania Ave., N.W.                   )
     Washington, D.C. 20500;                        )
                                                    )
DONALD RUMSFELD,                                     )
     Secretary, United States                       )
     Department of Defense                          )
     1000 Defense Pentagon                          )
     Washington, D.C. 20301-1000;                   )
                                                    )
REAR ADM. HARRY B. HARRIS, JR.,                      )
     Commander, Joint Task Force – GTMO             )
     JTF – GTMO                                     )
     APO AE 09360; and                              )
                                                    )
ARMY COL. WADE F. DAVIS,                             )
     Commander, Joint Detention                     )
        Operations Group, JTF – GTMO               )
     JTF – GTMO                                     )
     APO AE 09360,                                  )
                                                    )
*Respondents/Defendants.*                            )

## PETITION FOR A WRIT OF HABEAS CORPUS

Abdul Matin (hereinafter "Petitioner") seeks the Great Writ. Petitioner is a citizen of Afghanistan. He is a civilian who has been wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). Petitioner is detained without lawful basis, without charge, and without access to counsel or any fair process by which he might challenge his detention. Petitioner acts on his own behalf and through his brother-in-law and Next Friend Mohammed Younis. Petitioner is being held under color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner or to establish in this Court a lawful basis for his detention. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13, 2001 Executive Order, Respondents George W. Bush, President of the United States; Donald H. Rumsfeld, U.S. Secretary of Defense; Rear Admiral Harry B. Harris, Jr., Commander of Joint Task Force – GTMO; and Army Colonel Wade F. Davis, Commander, Joint Detention Operations Group, Joint Task Force – GTMO, are either ultimately responsible for, or have been charged with the responsibility of maintaining, the custody and control of the detained Petitioner at Guantánamo.

## I.
## JURISDICTION

1.     Petitioner brings this action pursuant to 28 U.S.C. §§ 2241(a), (c)(1) and (c)(3) and 2242, and invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I, II and III of, and the Fifth and Sixth Amendments to, the United

States Constitution. Because he seeks declaratory relief, Petitioner also relies on Fed. R. Civ. P. 57.

2.      This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus and to entertain the instant Petition under 28 U.S.C. § 2242. This Court is further empowered to entertain the Petition pursuant to the United States Supreme Court's ruling in *Rasul v. Bush*, 542 U.S. 466 (2004). This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201; to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction; and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## DETAINEE TREATMENT ACT OF 2005

3.      On December 30, 2005, Respondent George W. Bush signed into law the Detainee Treatment Act of 2005, Pub. L. No. 109-148, §§ 1001-1006, 119 Stat. 2680, 2739-45 (2005) ("DTA"). Section 1005(e)(1) of the DTA amended 28 U.S.C. § 2241 to eliminate the jurisdiction of the federal courts to hear or consider petitions for Writs of Habeas Corpus and other actions brought by or on behalf of detainees held in Guantánamo filed after the date of its enactment.

4.      Section 1005(e)(2)(A) of the DTA granted the United States Court of Appeals for the District of Columbia Circuit "exclusive jurisdiction" to determine the validity of any final decision of a Combatant Status Review Tribunal ("CSRT") that an alien is properly detained as an "enemy combatant." Section 1005(e)(2)(C) also provided that the applicable "scope of review" by the Court of Appeals is limited to determining whether a final CSRT decision "was consistent with the standards and procedures specified by the Secretary of Defense," and "to the extent the Constitution and laws of the United States are applicable, whether the use of such

standards and procedures to make the determination is consistent with the Constitution and laws of the United States."

     5.     Section 1005(e)(3)(A) of the DTA granted the United States Court of Appeals for the District of Columbia Circuit "exclusive jurisdiction" to determine the validity of any final decision rendered by a military commission. Section 1005(e)(3)(D) specified a "scope of review" analogous to that provided for the CSRT determinations.

     6.     Section 1005(e) of the DTA fails to provide the full measure of process, rights and remedies required by the Suspension Clause of the United States Constitution, Art. I, § 9, cl. 2.

     7.     Among other things, the CSRT process fails to provide an adequate substitute for habeas corpus. A CSRT is a non-adversary hearing conducted pursuant to rules and procedures that are unfair in design and biased in practice. For example, under the CSRT rules and procedures, every detainee is:

           (a)    Denied access to counsel;

           (b)    Denied the right to see the evidence against him;

           (c)    Denied the right to confront, or even know the identity of, his accusers;

           (d)    Denied the right to call witnesses;

           (e)    Denied the right to present evidence;

           (f)    Denied the right to know how the military collected evidence; and

           (g)    Denied an impartial tribunal because the CSRT must presume that evidence against a detainee (which he has not seen) is genuine and accurate.

The CSRT rules and procedures further allow for the consideration of hearsay evidence and/or evidence obtained by torture or coercion. These rules and procedures in practice and effect virtually compel the CSRT conclusion that the detainee is an "enemy combatant."

8.     The CSRTs are incapable of determining who is or is not properly detained by Respondents as an "enemy combatant." Even where a CSRT determines that a detainee is actually innocent any offense or wrongdoing, that detainee may continue to be held virtually *incommunicado*, indefinitely, without charge, without access to counsel, and without any meaningful opportunity to challenge the legality of his detention. Respondents have held, and continue to hold, detainees who have been determined through the CSRT process to be "no longer enemy combatants" or "non-enemy combatants" without affording them the right to an adequate and meaningful judicial process.

9.     The CSRT rules and procedures promulgated by Respondents are inconsistent with the Constitution and laws of the United States.

10.     Moreover, on information and belief, Petitioner's CSRT was not properly conducted in accordance with the CSRT rules and procedures promulgated or required to be promulgated by Respondents; the CSRT has not made a "final decision" that Petitioner is properly detained as an "enemy combatant"; and/or the conclusion of the CSRT that Petitioner is an "enemy combatant" is not supported by a preponderance of the evidence.

11.     Section 1005(e) of the DTA is unconstitutional on its face and as applied to Petitioner because it violates the Habeas Corpus Suspension Clause of the United States Constitution, Art. I, § 9, cl. 2, and therefore does not deprive this Court of jurisdiction to hear or consider this Petition, and grant the relief that Petitioner seeks herein.

## III.
## PARTIES

12.    Petitioner is a citizen of Afghanistan who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo.

13.    Petitioner's Next Friend is his brother-in-law Mohammed Younis, who is also a citizen of Afghanistan. Mohammed Younis acts as Next Friend to his brother-in-law because Petitioner has been denied access to legal counsel and to the courts of the United States. Mohammed Younis acts as Next Friend in order to assist Petitioner in seeking redress for these grievances.

14.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States military. Petitioner is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Petitioner's unlawful detention and is sued in his official capacity.

15.    Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war or, alternatively, pursuant to the Executive Order, Respondent Rumsfeld has been charged with maintaining the custody and control of Petitioner. He is sued in his official capacity.

16.    Respondent Rear Admiral Harry B. Harris, Jr. is the Commander of Joint Task Force – GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioner and is sued in his official capacity.

17.    Respondent Army Colonel Wade F. Davis is the Commander of the Joint Detention Operations Group and the JTF – GTMO detention camps, including the U.S. facility where Petitioner is presently held.  He is the immediate custodian responsible for Petitioner's detention and is sued in his official capacity.

18.    Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

## IV.
## STATEMENT OF FACTS

19.    On information and belief, Petitioner is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the United States Government in any civil or military proceeding.

20.    On information and belief, Petitioner is not, nor has he ever been an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld,* 542 U.S. 507, 516 (2004).

21.    Petitioner seeks to enforce his right to a judicial determination by an appropriate and lawful authority as to whether there is a lawful and factual basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

22.    On information and belief, at the time of his seizure and detention, Petitioner was not a member of the Taliban Government's armed forces or Al Qaeda. Prior to his detention, he did not commit any violent act against any American person or property. He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda.

23.    On information and belief, Petitioner remains incarcerated at Guantánamo, a territory over which the United States exercises exclusive jurisdiction and control.

24.    Petitioner has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the Constitution, laws and treaties of the United States, or customary international law.

25.    On information and belief, Petitioner desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

### The Authorization for the Use of Military Force

26.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban Government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("AUMF").

27.    As Petitioner did not participate in the armed conflict at any point in time, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or the AUMF.

**The Executive Order**

28.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing

Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

  (i)  is or was a member of the organization known as al Qaeda;

  (ii)  has engaged in, aided or abetted, or conspired to commit, acts of
international terrorism, or acts in preparation therefor, that have
caused, threaten to cause, or have as their aim to cause, injury to or
adverse effects on the United States, its citizens, national security,
foreign policy, or economy; or

  (iii)  has knowingly harbored one or more individuals described in
subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001).  President Bush must make

this determination in writing.   The Executive Order was neither authorized nor directed by

Congress, and is beyond the scope of the AUMF.

29.    The Executive Order purports to vest President Bush with the sole discretion to

identify individuals who fall within its purview.   It establishes no standards governing the

exercise of his discretion.  Once a person has been detained, the Executive Order contains no

provision for that person to be notified of the charges he may face or the basis of his detention.

The Executive Order authorizes detainees to be confined indefinitely without charges or the

opportunity to challenge the basis for their detention.  It contains no provision for a detainee to

be notified of his rights under domestic and international law, and provides neither the means to

contact and secure counsel, nor rights to notice of consular protection or to consular access at the

detainee's request.  It provides no right to appear before a neutral tribunal to review the basis for

or the legality of a detainee's continued detention and contains no provision for recourse to an

Article III court.   Indeed, the United States Supreme Court in *Rasul v. Bush*, 542 U.S. 466

(2004), invalidated the Executive Order's provision barring federal review of the legality of the

detainees' imprisonment. The Executive Order purports to authorize indefinite and unreviewable

detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

30.    The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner was, and is, being made by Respondents in the United States and in this judicial district.

31.    On information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner is subject to the Executive Order.

32.    Petitioner is not properly subject to the Executive Order, and, in any event, the Executive Order is unjust, *ultra vires*, and violates the laws, treaties, and Constitution of the United States.  Petitioner has been, and is being, detained unlawfully purportedly pursuant President Bush's authority as Commander-in-Chief and/or under the laws and usages of war.

### Guantánamo Bay Naval Station

33.    On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba.  In April 2002, prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo.  Currently, some prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

34.    Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Rasul v. Bush*, 542 U.S. 466 (2004).

35.    On a date unknown to counsel, but known to Respondents, the United States military transferred Petitioner to Guantánamo, where he has been held ever since, in the custody and control of Respondents.

## The Conditions of Detention at Guantánamo

36.    Since gaining control of Petitioner, the United States military has held him virtually *incommunicado*.

37.    On information and belief, Petitioner has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges.  He has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law.   Indeed, Respondents have taken the position that Petitioner should not be informed of these rights.  As a result, Petitioner lacks any ability to protect or to vindicate his rights under domestic and international law.

38.    On information and belief, Petitioner has been forced to provide involuntary statements to Respondents' agents at Guantánamo.

39.    On information and belief, Petitioner has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.*, Amnesty International, *Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power*, at 83-115 Ch. 12-13, AMR 51/063/2005 (13 May 2005); Physicians for Human Rights, *Break Them Down: Systematic Use of Psychological Torture by US Forces*, Ch. 3 (2005); United Nations Press Release, *United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay*

*Detainees*, Feb. 4, 2005; International Committee of the Red Cross, Press Release, *The ICRC's Work at Guantánamo Bay*, Nov. 30, 2004; International Committee of the Red Cross, Operational Update, *US Detention Related to the Events of September 11, 2001 and Its Aftermath – the Role of the ICRC*, July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the "War on Terror"*, at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.

40.    Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

41.    In a confidential report to the United States Government, the ICRC charged the United States military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantánamo*, N.Y. Times, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

for interrogations. *Id.*; *see also* M. Gregg Bloche & Jonathan H. Marks, *When Doctors Go to War*, N. Engl. J. Med., Jan. 6, 2005, at 3-4.

42.     Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See, e.g.,* Carol D. Leonnig, *Guantánamo Detainee Says Beating Injured Spine; Now in Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land*, Wash. Post, Aug. 13, 2005, at A18; Amnesty International, *Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power*, at 83-115 Ch. 12-13, AMR 51/063/2005 (13 May 2005); Amnesty International, *Guantánamo: An Icon of Lawlessness*, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, *Fresh Details Emerge on Harsh Methods at Guantánamo*, N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig, *Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, Wash. Post, Dec. 26, 2004, at A1; Neil A. Lewis & David Johnston, *New F.B.I. Memos Describe Abuses of Iraq Inmates*, N.Y. Times, Dec. 21, 2004, at A1; Dan Eggen & R. Jeffrey Smith, *FBI Agents Allege Abuse of Detainees at Guantánamo Bay*, Wash. Post, Dec. 21, 2004, at A1; Neil A. Lewis, *F.B.I. Memos Criticized Practices at Guantánamo*, N.Y. Times, Dec. 7, 2004, at A19.

43.     The Associated Press has also reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. *See Gitmo Soldier Details Sexual Tactics*, Assoc. Press, Jan. 27, 2005; Eric Saar & Viveca Novak, Inside the Wire: A Military Intelligence Soldier's Eyewitness Account of Life at Guantánamo 228 (2005).

44.     In fact, many of the egregious interrogation techniques used in the Abu Ghraib detention center and other detention facilities in Iraq – such as the use of aggressive dogs to

intimidate detainees, sexual humiliation, stress positions, and sensory deprivation – were pioneered at Guantánamo. *See* Josh White, *Abu Ghraib Dog Tactics Came From Guantanamo; Testimony Further Links Procedures at 2 Facilities,* Wash. Post, July 27, 2005, at A14; and Josh White, *Abu Ghraib Tactics Were First Used at Guantanamo,* Wash. Post, July 14, 2005, at A1.

45.     The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, on information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, *Lawyers Describe Guantánamo Detainees,* Seattle Post-Intelligencer, Jan. 19, 2005.

46.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by United States military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. *See* Eric Lichtblau, *Gonzales Says '02 Policy on Detainees Doesn't Bind CIA,* N.Y. Times, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells Senate,* Wash. Post, Jan. 18, 2005, at A4.

47.     In published statements, President Bush and Secretary Rumsfeld, and predecessors of Respondents Harris and Davis, respectively, Lenhert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.,* Roland Watson, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine

Brig. Gen. Mike Lenhert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . ."); John Mintz, *Extended Detention in Cuba Mulled*, Wash. Post, Feb. 13, 2002 ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

     48.    According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo indefinitely. *See* Dep't of Defense Press Background Briefing of July 3, 2003, *available at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html.

     49.    Counsel for Respondents have also consistently maintained that the United States may hold the detainees like Petitioner under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Motion to Dismiss at 22-24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1. Moreover, the Government has begun constructing a new, more permanent facility at Guantánamo. *See* Drake Bennett, *The Road from Guantánamo*, Boston Globe, June 25, 2006; *see also* Christopher Cooper, *In Guantánamo, Prisoners Languish in a Sea of Red Tape*, Wall St. J., Jan. 26, 2005, at A1; *Guantánamo Takes on the Look of Permanency*, Assoc. Press, Jan. 9, 2005.

**Rendition**

50.    During interrogations, detainees have also been threatened with rendition or transfer to countries that permit indefinite detention without charge or trial and/or routinely practice torture.  On information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition.  This practice, known as "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture.  *See* Jane Mayer, *Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program*, New Yorker, Feb. 14, 2005, at 106.

51.    The United States Government's practice of extraordinary rendition has been well documented by major American and international news organizations, including, *inter alia*, the *Washington Post*, the *Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source.  The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, 2002, at A1; *see also* Dana Priest, *Long Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . ., that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

52.     On information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture during interrogations and incarceration.

## V.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### (ARTICLE I – VIOLATION OF THE SUSPENSION CLAUSE)

53.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

54.     Respondents' arrest and continued detention of Petitioner violates the United States Constitution, Habeas Corpus Suspension Clause, Art. I, § 9, cl. 2, because the Suspension Clause guarantees Petitioner the right to be charged criminally or released. Petitioner has been and continues to be detained without charge.

55.     Respondents' arrest and continued detention of Petitioner violates the United States Constitution, Habeas Corpus Suspension Clause, Art. I, § 9, cl. 2, because the Suspension Clause guarantees Petitioner the right to an adequate and meaningful judicial process. Petitioner has been and continues to be detained without such process.

56.     Respondents have seized and continue to detain Petitioner without affording him fundamental due process.

57.     To the extent that the DTA purports to remove this Court's jurisdiction over Petitioner's habeas petition challenging the legality of his detention, Respondent's actions constitute an unlawful Suspension of the Writ of Habeas Corpus, in violation of Article I, § 9, cl. 2 of the United States Constitution.

58.     Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## SECOND CLAIM FOR RELIEF

### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE
### OF THE FIFTH AMENDMENT TO THE UNITED STATES
### CONSTITUTION – UNLAWFUL DEPRIVATION OF LIBERTY)

59.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

60.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well as the Due Process Clause of the Fifth Amendment to the Constitution of the United States. President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals including Petitioner, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

61.     To the extent that Petitioner's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner.

62.     Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## THIRD CLAIM FOR RELIEF

### (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION – UNLAWFUL CONDITIONS OF CONFINEMENT)

63.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

64.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

65.    Accordingly, Petitioner is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

## FOURTH CLAIM FOR RELIEF

### (GENEVA CONVENTIONS – ARBITRARY DENIAL OF DUE PROCESS)

66.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

67.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

68.    Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

69.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

70.    Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

### FIFTH CLAIM FOR RELIEF

### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW – ARBITRARY DENIAL OF DUE PROCESS)

71.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

72.    By the actions described above, Respondents have denied and continue to deny Petitioner the process due to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

73.    Because Respondents are detaining Petitioner "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States," Petitioner's claim arises under 28 U.S.C. § 2241, and he is entitled to habeas relief.

74.    Petitioner is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

### SIXTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE – TORTURE)

75.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

76.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner in order to obtain coerced information or confessions from him, punish or intimidate Petitioner or

for other purposes. Among other abuses, Petitioner has been held in and surrounded by conditions of isolation; constant vulnerability to repeated interrogation and severe beatings; the threat or reality of being kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement or the threat of solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

77.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

78.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner.

79.    Petitioner was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief and other relief to be determined at trial.

### SEVENTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE – WAR CRIMES)

80.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

81.        By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment

of Petitioner constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

82.    As a result of Respondents' unlawful conduct, Petitioner has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## EIGHTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE –
### CRUEL, INHUMAN OR DEGRADING TREATMENT)

83.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

84.    The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

85.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

86.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner.

87.    Petitioner was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief as well as other relief to be determined at trial.

## NINTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE – ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

88.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

89.    The acts described herein constitute arbitrary arrest and detention of Petitioner in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

90.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

91.    As a result of Respondents' unlawful conduct, Petitioner has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse,

and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

### TENTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE – ENFORCED DISAPPEARANCE)

92.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

93.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

94.    As a result of Respondents' unlawful conduct, Petitioner has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory and injunctive relief and such other relief as the court may deem appropriate.

### ELEVENTH CLAIM FOR RELIEF

### (ARTICLE II OF THE UNITED STATES CONSTITUTION – UNLAWFUL DETENTION)

95.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

96.    Petitioner is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied

territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 542 U.S. 507, 522n.1 (2004).

97. By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner and transfer him to military detention, and by authorizing and ordering his continued military detention at Guantánamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner.

98. The military seizure and detention of Petitioner by the Respondents is *ultra vires* and illegal because it is in violation of Article II of the United States Constitution. To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

99. To the extent that Respondents assert that their authority to detain Petitioner derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

100. Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF

### (VIOLATION OF THE APA – ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

101. Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

102. Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

103. By arbitrarily and capriciously detaining Petitioner in military custody for over four years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

104. Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### THIRTEENTH CLAIM FOR RELIEF

#### (VIOLATION OF THE APA – ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

105. Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

106. By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

107. Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF

### (VIOLATION OF THE APA – TORTURE AND
### CRUEL, INHUMAN OR DEGRADING TREATMENT)

108.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

109.    By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

110.    Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF

### (FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION -
### VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

111.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

112.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

113.    Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF

### (DUE PROCESS CLAUSE – RENDITION)

114.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

115.    On information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

116.    Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF

### (CONVENTION AGAINST TORTURE AND CONVENTION RELATING TO THE STATUS OF REFUGEES – RENDITION)

117.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

118.    On information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

119.    Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## EIGHTEENTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE – RENDITION)

120.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

121.     On information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

122.     Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

### VI.
### PRAYER FOR RELIEF

WHEREFORE, Petitioner prays for relief as follows:

1.     Designate Mohammed Younis as the Next Friend of Petitioner;

2.     Grant the Writ of Habeas Corpus and order Respondents to release Petitioner from his current unlawful detention;

3.     Order that Petitioner be brought before the Court or before a Magistrate Judge assigned by the Court at a convenient facility to conduct proceedings under the supervision of the Court to vindicate his rights;

4.     Order that Petitioner cannot be transferred to any other country without the specific, written agreement of Petitioner and Petitioner's counsel while this action is pending;

5.     Order that Petitioner cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petition will be subject to torture;

6.     Order Respondents to allow counsel immediately to meet and confer with Petitioner, in private and unmonitored attorney-client conversations;

7.     Order Respondents to cease all interrogations of Petitioner, direct or indirect, while this litigation is pending;

8.     Order Respondents to cease all acts of torture; cruel, inhuman and degrading treatment; and outrages upon the personal dignity of Petitioner;

9.     Order and declare that Section 1005(e) of the DTA violates the Habeas Corpus Suspension Clause of the United States Constitution;

10.     Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the United States Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, federal common law, the treaties of the United States and customary international law;

11.     Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international human rights and humanitarian law; and

12.     Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law and international law.

Dated: New York, New York
      September __28__, 2006

                                    Respectfully submitted,

                                    Counsel for Petitioners:

                                    _W. lliam Goodman /ar_

                                    Michael Ratner
                                    William Goodman
                                    Gitanjali S. Gutierrez
                                    J. Wells Dixon
                                    CENTER FOR CONSTITUTIONAL RIGHTS
                                    666 Broadway, 7th Floor
                                    New York, New York 10012
                                    Tel: (212) 614-6464
                                    Fax: (212) 614-6499

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioner hereby certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioner without compensation.

Dated: New York, New York
      September _____, 2006

                                  *William Goodman /ar*

                                 Michael Ratner
                                 William Goodman
                                 Gitanjali S. Gutierrez
                                 J. Wells Dixon
                                 CENTER FOR CONSTITUTIONAL RIGHTS
                                 666 Broadway, 7th Floor
                                 New York, New York 10012
                                 Tel: (212) 614-6464
                                 Fax: (212) 614-6499

**Authorization**

Date: _Feb. 9, 2006_

My name is _Mohammed Younis_ . I am acting as next friend for my _brother-in-law_ , whose name is _Abdel Matin_ , a citizen of _Afghanistan_ , who is being held in Guantánamo Bay.

I know that he would want me to act on his behalf to secure legal representation for him. I hereby authorize Michael Ratner and Barbara Olshansky of the *Center for Constitutional Rights* and any person assigned by these lawyers to act on my behalf and on my relative's behalf, to secure any documents and information concerning my relative that are necessary for his defense, and to seek whatever redress they believe to be in his best interests, in the Courts of the United States and in any other legal forum available.

Signature: _____

Print Name: _Mohammed Younis_

Witnessed by: _____

Print Name: _Hussain Ahmed adli_