## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDUL MATIN,** : | |
| : | |
| **MOHAMMED YOUNIS,** : | |
|     **as Next Friend of Abdul Matin,** : | |
| : | |
| *Petitioners*, : | |
| : | |
|     **v.** : | **Civil Action No. 06-cv-01679** |
| : | **(RMU)** |
| : | |
| **GEORGE W. BUSH, et al.,** : | |
| : | |
| *Respondents*. : | |

## MOTION FOR ENTRY OF PROTECTIVE ORDER
## AND TO COMPEL PRODUCTION OF FACTUAL RETURN

Petitioner Abdul Matin, by and through his next friend Mohammed Younis, respectfully moves for entry of: (1) the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba, first issued on November 8, 2004, (344 F. Supp. 2d 174 (D.D.C. 2004)); (2) the Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2004; (3) the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, first issued on December 13, 2004, all in the *In re Guantánamo Bay Detainee Cases* by then-Coordinating Judge Joyce Hens Green (collectively, "the Protective Order") attached hereto as Exhibits 1-3; and (4) an order compelling Respondents to provide counsel with access to the classified factual return for Petitioner within thirty days of entry of the Protective Order.

There is no reason to delay counsel's access to Petitioner or to the classified factual return.  It is indisputable that, regardless of whether Petitioner challenges his detention through

22318825v3

habeas or the Detainee Treatment Act of 2005, Pub. L. No. 109-148, §§ 1001-1006, 119 Stat.

2680, 2739-45 (2005) ("DTA"), Petitioner has the right to communicate with counsel and to

have counsel review the factual basis for his detention.

The effect of the DTA and the Military Commissions Act of 2006, Pub. L. No. 109-366

("MCA") on this Court's jurisdiction over this case has not been resolved.  That issue is *sub*

*judice* before the United States Court of Appeals for the District of Columbia Circuit in *Al Odah*

*v. United States,* No. 05-5064, and *Boumediene v. Bush,* No. 05-5062.  Those cases have been

subject to six rounds of briefing, two oral arguments and been pending for more than two years.

There is no indication of when they will be resolved, and any decision will almost certainly be

appealed to, and decided by, the United States Supreme Court.

While the jurisdictional issue remains unresolved, this Court and others in this district

have ordered entry of the protective order and the production of factual returns in pending habeas

cases on behalf of Guantanamo detainees because such access would also be warranted under the

DTA.  As this Court recognized in another case:

> [d]espite the lack of finality regarding the issues on appeal, … it is
> hardly sensible to withhold or frustrate something that no one
> doubts is petitioner's right – a meaningful communication with
> counsel regarding the factual basis of petitioner's detention.
> Allowing petitioners to meet with their lawyers is not the type of
> interim relief that even remotely risks infringing on the Court of
> Appeals' possible jurisdiction.

*Al-Zarnouqi v. Bush*, No. 06-cv-1767, at 2 (D.D.C. Dec. 4, 2006) (attached hereto as Exhibit 4)

(citing to *Feghoul v. Bush*, No. 06-cv-618, 2006 WL 3096856, at *1 (D.D.C. Oct. 31, 2006))

(internal quotations and citation omitted).  *See also Abdessalam v. Bush*, No. 06-cv-1761 (D.D.C.

December 22, 2006) (attached hereto as Exhibit 5); *Hentif v. Bush*, No. 06-cv-1766 (D.D.C. Nov.

21, 2006) (attached hereto as Exhibit 6); *Saleh v. Bush*, No. 06-cv-1765 (D.D.C. Nov. 17, 2006)

(attached hereto as Exhibit 7) ; *Feghoul v. Bush*, No. 06-cv-0618, 2006 WL 3096856 (D.D.C.

Oct. 31, 2006); *Lal v. Bush*, No. 06-cv-1763 (D.D.C. Oct. 29, 2006) (attached hereto as Exhibit 8) (all entering Protective Order after enactment of MCA).[1]  Entering the Protective Order will allow counsel to correspond and meet with Petitioner and prepare the substantive challenge to his detention while higher courts consider the jurisdictional issues.

The alleged basis for Petitioner's detention is contained in his factual return, a compilation of material from his review before the Combatant Status Review Tribunal ("CSRT").  Access to the factual return is critical to counsel's ability to represent Petitioner properly.  In other habeas cases, Respondents have not disputed that counsel for detainees with appropriate security clearance should be allowed access to the classified factual return but only raised jurisdictional objections.  *See, e.g., Razakah v. Bush,* No. 05-cv-2370 at 2 (D.D.C. Jan. 23, 2007) (attached hereto as Exhibit 9); *Al-Ghizzawi v. Bush,* No. 05-cv-2378 at 3-4 (D.D.C. Aug. 9, 2006) (attached hereto as Exhibit 10).

Those objections should not prevent production of the classified factual return now.  Access to the classified return will be necessary regardless of whether Petitioner's challenge is heard in a habeas action or one under the DTA.  Like entry of the Protective Order,  production of the classified factual return is "not the type of interim relief that even remotely risks infringing on the Court of Appeals' possible jurisdiction." *Al-Zarnouqi v. Bush*, No. 06-cv-1767, at 2 (D.D.C. Dec. 4, 2006).  As another court in this district found:

> In ordering production of the factual return, the Court takes note of the fact that, even if respondents' interpretation of the DTA's exclusive jurisdiction provision is correct, petitioner would be entitled to a review by the D.C. Circuit of 'the status determination of the Combatant Status Review Tribunal,' and completion of any such judicial review would necessitate that petitioner's counsel have access to the CSRT records.

---

[1] The Protective Order was also entered in a number of cases after enactment of the DTA but prior to enactment of the MCA.  *See, e.g., Al Salami v. Bush*, No. 05-cv-2452, 2006 U.S. Dist. LEXIS 61997 (D.D.C. Apr. 13, 2006); *Awad v. Bush*, No. 05-cv-2379 (D.D.C. Apr. 11, 2006); *Razakah v. Bush*, Civ. No. 05-cv-2370 (D.D.C. Mar. 17, 2006).

*Al-Ghizzawi v. Bush,* No. 05-cv-2378 at 3-4 (D.D.C. Aug. 9, 2006) (internal citations omitted); *see also Razakah v. Bush,* No. 05-cv-2370 (D.D.C. Jan. 23, 2007); *Feghoul,* 2006 WL 3096856, at *1 (all ordering production of factual return).

For the reasons set forth above, Petitioner respectfully requests that the Court enter the Protective Order, and order Respondents to produce the classified factual return within thirty days of entry of the Protective Order. Petitioner represents, however, that his lack of objection to entry of the Protective Order is without prejudice to his right to challenge or seek modification of any particular terms of the Protective Order in the future. Petitioner also reserves the right to ask this Court to review any particular designation by Respondents of information as "protected."

Pursuant to Local Civ. R. 7(m), counsel for Petitioner requested the relief sought in this motion from Respondents' counsel. Respondents' counsel opposes this motion.

Dated:  February 1, 2007

Respectfully submitted,

Counsel for Petitioners

  /s/  Jennifer R. Cowan_____
Jennifer R. Cowan (*pro hac vice*)

John B. Missing
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W. Ste 1100E
Washington, D.C. 20004-1169
Tel:  (202) 383 8000
Fax:  (202) 383 8118

Jeffrey I. Lang
Jennifer R. Cowan
Hadassa Waxman
Philip Rohlik
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6836

*Of Counsel*
Gitanjali Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## **CERTIFICATE OF SERVICE**

I, Jehan Aslam, hereby certify that on February 1, 2007 I caused a true and

accurate copy of this Motion of Abdul Matin for Entry of Protective Order and to Compel

Production of Factual Return, all Exhibits thereto, and the Proposed Order to be served

upon the following person, by electronic filing:

      Terry Marcus Henry
      U.S. Department of Justice
      Civil Division
      P.O. Box 883
      20 Massachusetts Avenue, NW
      Suite 7144
      Washington, DC 20044


                                       __ /s/ Jehan Aslam____
                                       Jehan Aslam

# __EXHIBIT 1__

To the Motion for Entry of Protective Order

On Behalf of Petitioner,

## ABDUL MATIN

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | Civil Action Nos. |
| ) | **02-CV-0299 (CKK), 02-CV-0828 (CKK),** |
| ) | **02-CV-1130 (CKK), 04-CV-1135 (ESH),** |
| ) | **04-CV-1136 (JDB), 04-CV-1137 (RMC),** |
| *In re* **Guantanamo Detainee Cases** ) | **04-CV-1142 (RJL), 04-CV-1144 (RWR),** |
| ) | **04-CV-1164 (RBW), 04-CV-1166 (RJL),** |
| ) | **04-CV-1194 (HHK), 04-CV-1227 (RBW),** |
| ) | **04-CV-1254 (HHK), 04-CV-1519 (JR)** |
| _____ ) | |

## AMENDED PROTECTIVE ORDER AND PROCEDURES FOR COUNSEL ACCESS TO DETAINEES AT THE UNITED STATES NAVAL BASE IN GUANTANAMO BAY, CUBA

This matter comes before the Court upon Respondents' Motion for Protective Order to prevent the unauthorized disclosure or dissemination of classified national security information and other protected information that may be reviewed by, made available to, or are otherwise in the possession of, the petitioners and/or petitioners' counsel in these coordinated cases. Pursuant to the general supervisory authority of the Court, in order to protect the national security, and for good cause shown,

IT IS ORDERED:

1. The Court finds that these cases involve classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know." These cases may also involve other protected information or documents, the storage, handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.

2. The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in

these cases, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with these cases, including the privilege team as defined in Exhibit A.

3.    The procedures set forth in this Protective Order will apply to all aspects of these cases, and may be modified by further order of the Court *sua sponte* or upon application by any party.  The Court will retain continuing jurisdiction to enforce or modify the terms of this Order.

4.    Nothing in this Order is intended to or does preclude the use of classified information by the government as otherwise authorized by law outside of these actions.

5.    Petitioners' counsel shall be responsible for advising their employees, the petitioners, and others of the contents of this Protective Order, as appropriate or needed.

6.    Petitioners' counsel are bound by the terms and conditions set forth in the "Revised Procedures For Counsel Access To Detainees At the U.S. Naval Base In Guantanamo Bay, Cuba," and the procedures for handling mail and documents brought into and out of counsel meetings, attached hereto as Exhibit A.  This Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in Exhibit A to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information.  Any violation of the terms and conditions of those procedures will also be deemed a violation of this Protective Order.  This paragraph does not apply with respect to provisions in the procedures contained in Exhibit A that are or have been overridden by the Court.

7.    The privilege team shall not disclose to any person any information provided by counsel for a petitioner or by a petitioner, other than information provided in a filing with the Court, unless such information, if it were monitored information, could be disclosed under Section X of Exhibit A.  Such disclosure shall be consistent with the provisions of Section X of Exhibit A.

Definitions

8.     As used herein, the words "documents" or "information" shall include, but are not limited to, all written or printed matter of any kind, formal or informal, including originals, conforming copies and non-conforming copies (whether different from the original by reason of notation made on such copies or otherwise), and further include, but are not limited to:

a.     papers, correspondence, memoranda, notes, letters, reports, summaries, photographs, maps, charts, graphs, interoffice and intra-office communications, notations of any sort concerning conversations, meetings, or other communications, bulletins, teletypes, telegrams, telefacsimiles, invoices, worksheets, and drafts, alterations, modifications, changes and amendments of any kind to the foregoing;

b.     graphic or oral records or representations of any kind, including, but not limited to, photographs, charts, graphs, microfiche, microfilm, videotapes, sound recordings of any kind, and motion pictures;

c.     electronic, mechanical or electric records of any kind, including, but not limited to, tapes, cassettes, disks, recordings, electronic mail, films, typewriter ribbons, word processing or other computer tapes or disks, and all manner of electronic data processing storage; and

d.     information acquired orally.

9.     The terms "classified national security information and/or documents," "classified information" and "classified documents" refer to:

a.     any classified document or information that has been classified by any Executive Branch agency in the interests of national security or pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE

3

COMPARTMENTED INFORMATION (SCI)," or any classified information contained in such document;

       b.    any document or information, regardless of its physical form or characteristics, now or formerly in the possession of a private party that has been derived from United States government information that was classified, regardless of whether such document or information has subsequently been classified by the government pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)";

       c.    verbal or non-documentary classified information known to the petitioner or petitioners' counsel; or

       d.    any document and information as to which the petitioner or petitioners' counsel have been notified orally or in writing that such documents or information contains classified information.

10.    All classified documents, and information contained therein, shall remain classified unless the documents bear a clear indication that they have been declassified by the agency or department that is the original classification authority of the document or the information contained therein (hereinafter, the "original classification authority").

11.    The terms "protected information and/or documents," "protected information" and "protected documents" refer to any document or information deemed by the Court, either upon application by counsel or *sua sponte*, as worthy of special treatment as if the document or information were classified, even if the document or information has not been formally deemed to be classified.

12.    For purposes of this Protective Order, "petitioners' counsel" shall be defined to include an attorney who is employed or retained by or on behalf of a petitioner for purposes of

representing the petitioner in habeas corpus or other litigation in federal court in the United States, as well as co-counsel, interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation.

13.     "Access to classified information" or "access to protected information" shall mean having access to, reviewing, reading, learning, or otherwise coming to know in any manner any classified information or protected information.

14.     "Secure area" shall mean a physical facility accredited or approved for the storage, handling, and control of classified information.

15.     "Unauthorized disclosure of classified information" shall mean any knowing, willful or negligent action that could reasonably be expected to result in a communication or physical transfer of classified information to an unauthorized recipient.

<u>Designation of Court Security Officer</u>

16.     The Court designates Christine E. Gunning as Court Security Officer for these cases, and Joan B. Kendrall, Michael P. Macisso, James P. Londergan, Mary M. Cradlin, Daniel O. Hartenstine, John P. Molinard, Jennifer Campbell, and Barbara J. Russell as Alternate Court Security Officers, for the purpose of providing security arrangements necessary to protect from unauthorized disclosure of any classified documents or information, or protected documents or information, to be made available in connection with these cases.  Petitioners' counsel shall seek guidance from the Court Security Officer with regard to appropriate storage, handling, transmittal, and use of classified documents or information.

<u>Access to Classified Information and Documents</u>

17.    Without authorization from the government, no petitioner or petitioners' counsel shall have access to any classified information involved in these cases unless that person shall first have:

    a.    made a written submission to the Court Security Officer precisely stating the reasons why counsel has a need to know the classified information requested; and

    b.    received the necessary security clearance as determined by the Department of Justice Security Officer; and

    c.    signed the Memorandum of Understanding ("MOU"), attached hereto as Exhibit B, agreeing to comply with the terms of this Protective Order.

The written submissions that are made by counsel to the Court Security Officer stating the reasons why counsel has a need to know the classified information requested shall be kept confidential by the Court Security Officer and shall not be disclosed to any other counsel or party to these cases unless the Court specifically orders such disclosure.

18.    Petitioners' counsel to be provided access to classified information shall execute the MOU appended to this Protective Order, and shall file executed originals with the Court and submit copies to the Court Security Officer and counsel for the government.  The execution and submission of the MOU is a condition precedent for petitioners' counsel to have access to, or continued access to, classified information for the purposes of this proceeding.

19.    The substitution, departure, or removal of petitioners' counsel from these cases for any reason shall not release that person from the provisions of this Protective Order or the MOU executed in connection with this Order.

20.     The government shall arrange for one appropriately approved secure area for the use of petitioners' counsel.  The secure area shall contain a working area that will be supplied with secure office equipment reasonable and necessary to the preparation of the petitioners' case. Expenses for the secure area and its equipment shall be borne by the government.

21.     The Court Security Officer shall establish procedures to ensure that the secure area is accessible to the petitioners' counsel during normal business hours and at other times on reasonable request as approved by the Court Security Officer.  The Court Security Officer shall establish procedures to ensure that the secure area may be maintained and operated in the most efficient manner consistent with the protection of classified information.  The Court Security Officer or Court Security Officer designee may place reasonable and necessary restrictions on the schedule of use of the secure area in order to accommodate appropriate access to all petitioners' counsel in this and other proceedings.

22.     All classified information provided by the government to counsel for petitioners, and all classified information otherwise possessed or maintained by petitioners' counsel, shall be stored, maintained, and used only in the secure area.

23.     No documents containing classified information may be removed from the secure area unless authorized by the Court Security Officer or Court Security Officer designee supervising the area.

24.     Consistent with other provisions of this Protective Order, petitioners' counsel shall have access to the classified information made available to them in the secure area, and shall be allowed to take notes and prepare documents with respect to those materials.

25.     Petitioners' counsel shall not copy or reproduce any classified information in any form, except with the approval of the Court Security Officer or in accordance with the procedures established by the Court Security Officer for the operation of the secure area.

26.     All documents prepared by petitioners or petitioners' counsel that do or may contain classified information (including without limitation, notes taken or memoranda prepared by counsel and pleadings or other documents intended for filing with the Court) shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons who have received an appropriate approval for access to classified information.  Such activities shall take place in the secure area on approved word processing equipment and in accordance with the procedures approved by the Court Security Officer.  All such documents and any associated materials containing classified information (such as notes, memoranda, drafts, copies, typewriter ribbons, magnetic recordings, exhibits) shall be maintained in the secure area unless and until the Court Security Officer advises that those documents or associated materials are unclassified in their entirety.  None of these materials shall be disclosed to counsel for the government unless authorized by the Court, by petitioners' counsel or as otherwise provided in this Protective Order.

27.     Petitioners' counsel shall discuss classified information only within the secure area or in another area authorized by the Court Security Officer, shall not discuss classified information over any standard commercial telephone instrument or office intercommunication system, and shall not transmit or discuss classified information in electronic mail communications of any kind.

28.     The Court Security Officer or Court Security Officer designee shall not reveal to any person the content of any conversations she or he may hear by or among petitioners' counsel, nor reveal the nature of documents being reviewed by them, or the work generated by them, except as necessary to report violations of this Protective Order to the Court or to carry out their duties pursuant to this Order.  In addition, the presence of the Court Security Officer or Court Security Officer designee shall not operate as a waiver of, limit, or otherwise render inapplicable, the attorney-client privilege or work product protections.

8

29.     Petitioners' counsel shall not disclose the contents of any classified documents or information to any person, including counsel in related cases brought by Guantanamo Bay detainees in this or other courts, except those authorized pursuant to this Protective Order, the Court, and counsel for the government with the appropriate clearances and the need to know that information.  Except as otherwise specifically provided by Judge Colleen Kollar-Kotelly in her well-reasoned opinion addressing counsel access procedures regarding petitioners Mohammed Ahmed al Kandari, Fawzi Khalid Abdullah Fahad al Odah, and Khalid Abdullah Mishal al Mutairi in Al Odah v. United States, 02-CV-0828 (CKK), counsel for petitioners in these cases are presumed to have a "need to know" information both in their own cases and in related cases pending before this Court.  Therefore, and except as provided with respect to the three petitioners in Al Odah mentioned above, counsel for all petitioners in these cases who have satisfied all necessary prerequisites and follow all procedures set forth herein may share and discuss among themselves classified information to the extent necessary for the effective representation of their clients.  Counsel for respondents may challenge the "need to know" presumption on a case-by-case basis for good cause shown.

30.     Petitioners' counsel shall not disclose classified information not provided by petitioner-detainee to that petitioner-detainee.  Should petitioners' counsel desire to disclose classified information not provided by petitioner-detainee to that petitioner-detainee, petitioners' counsel will provide in writing to the privilege review team (See Exhibit A) a request for release clearly stating the classified information they seek to release.  The privilege review team will forward the petitioner counsel's request to the appropriate government agency authorized to declassify the classified information for a determination.  The privilege review team will inform petitioners' counsel of the determination once it is made.

31.    No petitioner or counsel for petitioner shall disclose or cause to be disclosed any information known or believed to be classified in connection with any hearing or proceeding in these cases except as otherwise provided herein.

32.    Except as otherwise stated in this paragraph and to ensure the security of the United States of America, at no time, including any period subsequent to the conclusion of the proceedings, shall petitioners' counsel make any public or private statements disclosing any classified information or documents accessed pursuant to this Protective Order, including the fact that any such information or documents are classified.  In the event that classified information enters the public domain, however, counsel is not precluded from making private or public statements about the information already in the public domain, but only to the extent that the information is in fact in the public domain.  Counsel may not make any public or private statements revealing personal knowledge from non-public sources regarding the classified or protected status of the information or disclosing that counsel had personal access to classified or protected information confirming, contradicting, or otherwise relating to the information already in the public domain.  In an abundance of caution and to help ensure clarity on this matter, the Court emphasizes that counsel shall not be the source of any classified or protected information entering the public domain.

As stated in more detail in paragraph 49 below, failure to comply with these rules may result in the revocation of counsel's security clearance as well as civil and/or criminal liability.

33.    The foregoing shall not prohibit petitioners' counsel from citing or repeating information in the public domain that petitioners' counsel does not know to be classified information or a classified document, or derived from classified information or a classified document.

34.    All documents containing classified information prepared, possessed or maintained by, or provided to, petitioners' counsel (except filings submitted to the Court and

served on counsel for the government), shall remain at all times in the control of the Court

Security Officer for the duration of these cases.  Upon final resolution of these cases, including

all appeals, all such documents shall be destroyed by the Court Security Officer.

Access to Protected Information and Documents

35.     Without authorization from the government or the Court, protected information

shall not be disclosed or distributed to any person or entity other than the following:

a.     petitioners' counsel, provided such individuals have signed the

Acknowledgment, attached hereto as Exhibit C, attesting to the fact that they have read this

Protective Order and agree to be bound by its terms; and

b.     the Court and its support personnel.

36.     The execution of the Acknowledgment is a condition precedent for petitioners'

counsel to have access to, or continued access to, protected information for the purposes of this

proceeding.  A copy of each executed Acknowledgment shall be kept by counsel making the

disclosure until thirty (30) days after the termination of this action, including appeals.

37.     The substitution, departure, or removal of petitioners' counsel from these cases

for any reason shall not release that person from the provisions of this Protective Order or the

Acknowledgment executed in connection with this Protective Order.

38.     Petitioners' counsel shall not disclose the contents of any protected documents or

information to any person, to include counsel in related cases brought by Guantanamo Bay

detainees in this or other courts, except those authorized pursuant to this Protective Order, the

Court, or counsel for the government.  Except as otherwise specifically provided by Judge

Colleen Kollar-Kotelly with respect to counsel for petitioners Mohammed Ahmed al Kandari,

Fawzi Khalid Abdullah Fahad al Odah, and Khalid Abdullah Mishal al Mutairi in Al Odah v.

United States, 02-CV-0828 (CKK), counsel for petitioners in these coordinated cases may share

protected information with each other but only to the extent that counsel have appropriate

11

security clearances and that all other procedures set forth in this Protective Order are complied with. Petitioners' counsel shall maintain all protected information and documents received through this proceeding in a confidential manner.

39.     Petitioners' counsel shall not disclose protected information not provided by petitioner-detainee to that petitioner-detainee without prior concurrence of counsel for the government or express permission of the Court.

40.     No petitioner or counsel for petitioner shall disclose or cause to be disclosed any information known or believed to be protected in connection with any hearing or proceeding in these cases except as otherwise provided herein.

41.     At no time, including any period subsequent to the conclusion of the proceedings, will petitioners' counsel make any public or private statements disclosing any protected information or documents accessed pursuant to this Protective Order, including the fact that any such information or documents are protected.

42.     Protected information shall be used only for purposes directly related to these cases and not for any other litigation or proceeding, except by leave of the Court. Photocopies of documents containing such information shall be made only to the extent necessary to facilitate the permitted use hereunder.

43.     Nothing in this Protective Order shall prevent the government from using for any purpose protected information it provides a party. Nothing in this Protective Order shall entitle another party to protected information.

44.     Supplying protected information to another party does not waive privilege with respect to any person or use outside that permitted by this Protective Order.

45.     Within sixty (60) days of the resolution of these actions, and the termination of any appeals therefrom, all protected documents or information, and any copies thereof, shall be promptly destroyed, provided that the party to whom protected information is disclosed certifies

in writing that all designated documents and materials have been destroyed, and further provided

that counsel for the government may retain one complete set of any such materials that were

presented in any form to the Court.  Any such retained materials shall be placed in an envelope or

envelopes marked "Protected Information Subject to Protective Order."  In any subsequent or

collateral proceeding, a party may seek discovery of such materials from the government, without

prejudice to the government's right to oppose such discovery or its ability to dispose of the

materials pursuant to its general document retention policies.

Procedures for Filing Documents

46.    Until further order of this Court, any pleadings or other document filed by a

petitioner shall be filed under seal with the Court through the Court Security Officer unless the

petitioner has obtained from the Court Security Officer permission, specific to a particular, non-

substantive pleading or document (e.g., motions for extensions of time, continuances, scheduling

matters, etc.) not containing information that is or may be classified or protected, to file the

pleading or document not under seal.  The date and time of physical submission to the Court

Security Officer shall be considered the date and time of filing with the Court.  The Court

Security Officer shall promptly examine the pleading or document and forward it to the

appropriate agencies for their determination whether the pleading or document contains classified

information.  If it is determined that the pleading or document contains classified information,

the Court Security Officer shall ensure that portion of the document, and only that portion, is

marked with the appropriate classification marking and that the document remains under seal.  If

it is determined that the pleading or document contains protected information, the Court Security

Officer shall ensure that portion of the document, and only that portion, remains under seal.  Any

document filed by petitioner that is determined not to contain classified information or protected

information, and is not subject to any other restrictions on disclosure, shall immediately be

unsealed by the Court Security Officer and placed in the public record.  The Court Security

13

Officer shall immediately deliver under seal to the Court and counsel for the government any pleading or document to be filed by petitioners that contains classified information or protected information. The Court shall then direct the clerk to enter on the docket sheet the title of the pleading or document, the date it was filed, and the fact that it has been filed under seal with the Court Security Officer.

47.    Any pleading or other document filed by the government containing classified information shall be filed under seal with the Court through the Court Security Officer. The date and time of physical submission to the Court Security Officer shall be considered the date and time of filing with the Court. The Court Security Officer shall serve a copy of any classified pleadings by the government upon the Petitioner at the secure facility.

48.    Nothing herein shall require the government to disclose classified or protected information. Nor shall anything herein prohibit the government from submitting classified information or protected information to the Court *in camera* or *ex parte* in these proceedings, or entitle petitioners or petitioners' counsel access to such submissions or information. Except for good cause shown in the filing, the government shall provide counsel for the petitioner or petitioners with notice served on such counsel on the date of the filing.

<u>Penalties for Unauthorized Disclosure</u>

49.    Any unauthorized disclosure of classified information may constitute violations of United States criminal laws. In addition, any violation of the terms of this Protective Order shall be immediately brought to the attention of the Court and may result in a charge of contempt of Court and possible referral for criminal prosecution. <u>See</u> <u>e.g.</u>, Executive Order 12958, as amended. Any breach of this Protective Order may also result in the termination of access to classified information and protected information. Persons subject to this Protective Order are advised that direct or indirect unauthorized disclosure, retention, or negligent handling of classified documents or information could cause damage to the national security of the United

States or may be used to the advantage of an adversary of the United States or against the interests of the United States.  Persons subject to this Protective Order are also advised that direct or indirect unauthorized disclosure, retention, or negligent handling of protected documents or information could risk the security of United States government personnel and facilities, and other significant government interests.  This Protective Order is to ensure that those authorized to receive classified information and protected information will not divulge this information to anyone who is not authorized to receive it, without prior written authorization from the original classification authority and in conformity with this Protective Order.

50.     The termination of these proceedings shall not relieve any person or party provided classified information or protected information of his, her, or its obligations under this Protective Order.


IT IS SO ORDERED.

November 8, 2004                              _____/s/_____
                                             JOYCE HENS GREEN
                                             United States District Judge

Exhibit A

**REVISED PROCEDURES FOR COUNSEL ACCESS TO DETAINEES
AT THE U.S. NAVAL BASE IN GUANTANAMO BAY, CUBA**

**I. Applicability**

Except as otherwise stated herein or by other Order issued in the United States District Court for the District of Columbia, the following procedures shall govern counsel access to all detainees in the control of the Department of Defense ("DoD") at the U.S. Naval Base in Guantanamo Bay, Cuba ("GTMO") by counsel for purposes of litigating the cases in which this Order is issued.

These procedures do not apply to counsel who are retained solely to assist in the defense of a detainee in a trial by military commission. Access by that counsel is covered by the Procedures for Monitoring Communications Between Detainees Subject to Trial by Military Commission and their Defense Counsel Pursuant to Military Commission Order No. 3.

**II. Definitions**

A. <u>Communications</u>:  All forms of communication between counsel and a detainee, including oral, written, electronic, or by any other means.

B. <u>Counsel</u>:  An attorney who is employed or retained by or on behalf of a detainee for purposes of representing the detainee in the United States District Court for the District of Columbia and who is admitted, either generally or pro hac vice, in this Court.  Unless otherwise stated, "counsel" also includes co-counsel, interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation.

C. <u>Detainee</u>:  An individual detained by DoD as an alleged enemy combatant at the U.S. Naval Base in Guantanamo Bay, Cuba.

D. <u>Privilege Team</u>:  A team comprised of one or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, will not take part in, any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee.  If required, the privilege team may include interpreters/translators, provided that such personnel meet these same criteria.

E. <u>Legal Mail</u>:  Letters written between counsel and a detainee that are related to the counsel's representation of the detainee, as well as privileged documents and publicly-filed legal documents relating to that representation.

1

EXHIBIT A

## III.  Requirements for Access to and Communication with Detainees

A.  <u>Security Clearance</u>:

    1.    Counsel must hold a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel).

    2.    Counsel who possess a valid security clearance shall provide, in writing, the date of their background investigation, the date such clearance was granted, the level of the clearance, and the agency who granted the clearance.  Access will be granted only after DoD verification of the security clearance.

    3.    Counsel who does not currently possess a Secret clearance will be required to submit to an application for clearance to the Department of Justice, Litigation Security Division.

B.  <u>Acknowledgment of and Compliance with Access Procedures</u>

    1.    Before being granted access to the detainee, counsel will receive a copy of these procedures.  To have access to the detainee, counsel must agree to comply fully with these procedures and must sign an affirmation acknowledging his/her agreement to comply with them.

    2.    This affirmation will not be considered an acknowledgment by counsel that the procedures are legally permissible.  Even if counsel elects to challenge these procedures, counsel may not knowingly disobey an obligation imposed by these procedures.

    3.    The DoD expects that counsel, counsel's staff, and anyone acting on the behalf of the attorney will fully abide by the requirements of this document.  Counsel is required to provide the DoD with signed affirmations from interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation, upon utilization of those individuals by counsel in a manner that implicates these procedures.

    4.    Should counsel fail to comply with the procedures set forth in this document, access to or communication with the detainee will not be permitted.

C.  <u>Verification of Representation</u>

    1.    Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation*.  This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as

EXHIBIT A

the name of the detainee being represented by the counsel.  Additionally, counsel shall provide evidence of his or her authority to represent the detainee.

2.      Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee.  The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee.  Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed.  Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

3.      If the counsel withdraws from representation of the detainee or if the representation is otherwise terminated, counsel is required to inform DoD immediately of that change in circumstances.

4.      Counsel must provide DoD with a signed representation stating that to the best of counsel's knowledge after reasonable inquiry, the source of funds to pay counsel any fees or reimbursement of expenses are not funded directly or indirectly by persons or entities the counsel believes are connected to terrorism or the product of terrorist activities, including "Specially Designated Global Terrorists," identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b) counsel has complied with ABA Model Rule 1.8(f).

D.  Logistics of Counsel Visits

1.      Counsel shall submit to the Department of Justice (DoJ) any request to meet with a detainee.  This request shall specify date(s) of availability for the meeting, the desired duration of the meeting and the language that will be utilized during the meeting with the detainee.  Reasonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting.  Once the request has been approved, DoJ will contact counsel with the date and duration of the meeting.

2.      Legal visits shall take place in a room designated by JTF-Guantanamo.  No more than two attorneys (or one attorney and one assistant) plus one interpreter/translator shall visit with a detainee at one time, unless approved in advance by the Commander, JTF-Guantanamo.  Such approval shall not be unreasonably withheld.

3.      Due to the mission and location of the US Naval Base at Guantanamo Bay, Cuba, certain logistical details will need to be coordinated by counsel prior to arrival.  This includes arrangements for travel and lodging.  Specific information regarding these issues will be provided by DoJ.

EXHIBIT A

4.     In order to travel to GTMO, all counsel must have a country and theater clearance for that specific visit.  In order to begin processing country and theater clearances, counsel must have confirmed flight information for travel to GTMO and a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel).  Country and theater clearances require twenty (20) days to process.  Accordingly, counsel shall provide DoD, through DoJ, with the required information no later than 20 days prior to the GTMO visit date, or as soon as a visit is scheduled.  Requests for visits made inside of 20 days will not normally be granted.

## IV.  Procedures for Correspondence Between Counsel and Detainee

A.  Mail Sent by Counsel to Detainee ("Incoming Mail")

1.     Counsel shall send incoming legal mail for a detainee to the privilege team at the appropriate address provided by government counsel.  Each envelope or mailer shall be labeled with the name of the detainee and shall include a return address for counsel sending the materials.  The outside of the envelope or mailer for incoming legal mail shall be labeled clearly with the following annotation: "Attorney-Detainee Materials-For Mail Delivery to Detainee."

2.     Each page of legal mail shall be labeled "Attorney-Detainee Materials."  No staples, paper clips or any non-paper items shall be included with the documents.

3.     Upon receiving legal mail from counsel for delivery to the detainee, the privilege team shall open the envelope or mailer to search the contents for prohibited physical contraband.  Within two (2) business days of receipt of legal mail, and assuming no physical contraband is present, the privilege team shall forward the mail to military personnel at GTMO in a sealed envelope marked "Legal Mail Approved by Privilege Team" and clearly indicating the identity of the detainee to which the legal mail is to be delivered.  The privilege team shall return to the sender any incoming mail that does not comply with the terms of paragraphs IV.A.1., 2.

4.     Within two (2) business days of receipt of legal mail from the privilege team, personnel at GTMO shall deliver the envelope or mailer marked by the privilege team as "Legal Mail Approved by the Privilege Team" to the detainee without opening the envelope or mailer.  If counsel desires confirmation that the documents were delivered to the detainee, counsel is responsible for providing a stamped, self-addressed envelope for that purpose.  The detainee shall be responsible for mailing any confirmation of delivery to counsel as outgoing legal mail.  This method shall be the sole and exclusive means by which confirmation of delivery is provided to counsel.

4

EXHIBIT A

5.      Written correspondence to a detainee not falling within the definition of legal mail shall be sent through the United States Postal Service to the appropriate address provided by government counsel.  Non-legal mail includes, but is not limited to, letters from persons other than counsel, including family and friends of the detainee.  These non-privileged communications will be reviewed by military personnel at GTMO under the standard operating procedures for detainee non-legal mail.

6.      Counsel is required to treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise by the privilege team or by this Court or another court.  Accordingly, if a counsel's correspondence contains any summary or recitation of or reference to a communication with a detainee that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information and Security Supplement to DOD Regulation 5200.1R.

7.      Written and oral communications with a detainee, including all incoming legal mail, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

B.  Mail Sent by Detainee to Counsel ("Outgoing Mail")

1.      Detainees will be provided with paper to prepare communications to counsel.  In the presence of military personnel, the detainee will seal the written communication into an envelope and it will be annotated as "Attorney-Detainee Materials-For Mail Delivery To Counsel."  Each envelope shall be labeled with the name of the detainee and the counsel.  Envelopes annotated with the name of persons other the detainee's counsel (including family/friends or other attorneys) shall be processed according to the standard operating procedures for detainee non-legal mail.

2.      Military personnel will collect the outgoing legal mail within one (1) business day of being notified by the detainee that the communication is prepared for sealing and mailing.

3.      After the outgoing legal mail is collected from the detainee, the envelope will be sealed into a larger envelope by military personnel at Guantanamo which will be marked as "Attorney-Detainee Materials-For Mail Delivery To Counsel" and will

5

be annotated with the name of the detainee and the counsel.  The envelope will be sealed and mailed in the manner required for classified materials.  Within two (2) business days of receipt from the detainee, the communication will be mailed to the appropriate address as provided by government counsel.

4.      Detainees also are permitted to send non-legal mail, including written communications to persons other than counsel, through the United States Postal Service.  These communications shall be reviewed by military personnel at Guantanamo under the standard operating procedures for detainee non-legal mail.

5.      In the event any non-legal correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) are sent to counsel as, or included with, legal mail, counsel shall return the documents to military personnel at GTMO for processing according to the standard operating procedures for detainee non-legal mail.

**V.  Materials Brought Into A Meeting With Detainee And Counsel**

A.      Counsel shall bring only legal mail, writing utensils and paper into any meeting with a detainee unless counsel has received prior approval from the Commander, JTF-GTMO.  The Commander shall not unreasonably withhold approval for counsel to bring into a meeting with a detainee letters, tapes, or other communications introducing counsel to the detainee, if the government has first reviewed the communication and determined that sharing the communication with the detainee would not threaten the security of the United States.

B.      Written and oral communications with a detainee, including all documents brought into a meeting with a detainee, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

**VI.  Materials Brought Out Of A Meeting With Detainee and Counsel**

A.      Upon the completion of each meeting with a detainee or during any break in a meeting session, counsel will give the notes or documents used or produced during the meeting to a designated individual at Guantanamo.  These materials will be sealed in the presence of counsel and will be handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

B.      Upon the completion of the counsel's visit to Guantanamo, the notes or documents used or produced during the visit shall be sealed in the presence of

EXHIBIT A

counsel and placed in an envelope labeled as "Attorney-Detainee Meeting Documents–For Delivery to Counsel." The envelope shall be sealed into a larger envelope by military personnel at Guantanamo which shall be marked as "Attorney-Detainee Meeting Documents-For Mail Delivery To Counsel" and shall be annotated with the name of the detainee and the counsel. The envelope shall be sealed and mailed in the manner required for classified materials. Within two (2) business days following the completion of the counsel's visit to Guantanamo, the package shall be mailed to the appropriate address provided by government counsel.

C.    Correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) shall not be handled through this process. If a detainee provides these communications to his counsel during a visit, counsel shall give those communications to military personnel at Guantanamo so they can be processed under the standard operating procedures for detainee non-legal mail.

## VII. Classification Determination of Detainee Communications

A.    Counsel may submit information learned from a detainee to the privilege team for a determination of its appropriate security classification. Counsel shall memorialize the information submitted for classification review into a written memorandum outlining as specifically as possible the information for which counsel requests a classification determination. All documents submitted for classification review shall be prepared, handled and treated in the manner required for classified materials, as provided by as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R. No information derived from these submissions shall be disclosed outside the privilege team pursuant to these procedures until after the privilege team has reviewed it for security and intelligence purposes. Absent express consent given by the Court, or except as otherwise provided in this document, the submissions shall not be disclosed to any person involved in the interrogation of a detainee, and no such individual may make any use of those communications whatsoever, nor shall the submissions be disclosed to any Government personnel involved in any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee.

B.    Counsel shall send all materials submitted for classification review to the appropriate address to be provided by government counsel. The outside of the envelope or mailer shall be clearly labeled "Attorney-Detainee Meeting Documents-For Classification Review By Privilege Team." Each envelope or mailer shall be annotated with the name of the detainee and the counsel. Each page of the document submitted for classification review shall be marked "Attorney-Detainee Materials" and "Classified." The envelope or mailer will be sealed and mailed in the manner required for classified materials.

EXHIBIT A

C.     As soon as possible after conducting the classification review, the privilege team shall advise counsel of the classification levels of the information contained in the materials submitted for review.  The privilege team shall forward its classification determination directly to counsel after a review and analysis period not to exceed, from the time of receipt by the privilege team:

1. Seven (7) business days for information that is written in the English language;

2. Fourteen (14) business days for any information that includes writing in any language other than English, to allow for translations by the privilege team;

3. Twenty (20) business days for any information where the privilege team has reason to believe that a code was used, to allow for further analysis.

D.     While conducting classification review, the privilege team shall promptly report any information that reasonably could be expected to result in immediate and substantial harm to the national security to the Commander, JTF-Guantanamo.  In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials as appropriate.

E.     If, at any time, the privilege team determines that information in the documents submitted for classification review relate to imminent acts of violence, the privilege team shall report the contents of those documents to Commander, JTF-Guantanamo.  In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials.

F.     The privilege team shall not disclose any information submitted by counsel for classification review outside the privilege team, except as provided by these procedures or as permitted by counsel submitting the information.

## VIII.  Telephonic Access to Detainee

A.     Requests for telephonic access to the detainee by counsel or other persons will not normally be approved. Such requests may be considered on a case-by-case basis due to special circumstances and must be submitted to Commander, JTF-Guantanamo.

B.     Any telephonic access by counsel will be subject to appropriate security procedures, but shall not include contemporaneous monitoring or recording.

C.     Any telephonic access by persons other than counsel will be subject to appropriate security procedures, including contemporaneous monitoring and recording.

8

EXHIBIT A

**IX. Counsel's Handling And Dissemination Of Information From Detainee**

    A.    Subject to the terms of any applicable protective order, counsel may disseminate the unclassified contents of the detainee's communications for purposes reasonably related to their representation of that detainee.

    B.    Counsel is required to treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise. All classified material must be handled, transported and stored in a secure manner, as provided by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

    C.    Counsel shall disclose to DoJ or Commander, JTF-Guantanamo any information learned from a detainee involving future events that threaten national security or involve imminent violence.

    D.    Counsel may not divulge classified information not learned from the detainee to the detainee. Counsel may not otherwise divulge classified information related to a detainee's case to anyone except those with the requisite security clearance and need to know using a secure means of communication. Counsel for detainees in the coordinated cases pending in the United States District Court for the District of Columbia are presumed to have a "need to know" information in related cases pending before this Court. Counsel for respondents in those cases may challenge this presumption on a case-by-case basis for good cause shown.

**X. JTF-Guantanamo Security Procedures**

    A.    Counsel and translators/interpreters shall comply with the following security procedures and force protection safeguards applicable to the US Naval Base in Guantanamo Bay, Cuba, JTF-Guantanamo and the personnel assigned to or visiting these locations, as well as any supplemental procedures implemented by JTF-Guantanamo personnel.

    B.    Contraband is not permitted in JTF-Guantanamo and all visitors are subject to search upon arrival and departure. Examples of contraband include, but are not limited to, weapons, chemicals, drugs, and materials that may be used in an escape attempt. Contraband also includes money, stamps, cigarettes, writing instruments, etc. No items of any kind may be provided to the detainee without the advance approval of the Commander, JTF-Guantanamo.

    C.    Photography or recording of any type is prohibited without the prior approval of the Commander, JTF-Guantanamo. No electronic communication devices are permitted. All recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment are prohibited in or near JTF-Guantanamo. Should any of these devices be inadvertently taken into a

EXHIBIT A

prohibited area, the device must be surrendered to JTF-Guantanamo staff and purged of all information.

D.    Upon arrival at JTF-Guantanamo, security personnel will perform a contraband inspection of counsel and translators/interpreters using metal detectors as well as a physical inspection of counsel's bags and briefcases and, if determined necessary, a physical inspection of his/her person.

E.    Counsel shall not be permitted to interview or question members of the Joint Task Force about their duties or interactions with detainees without first obtaining permission from the Commander, Joint Task Force Guantanamo.  Should permission be unreasonably denied, counsel may seek an Order from this Court granting permission for good cause shown.

F.    Counsel will meet with a detainee in conference facilities provided by GTMO. These facilities are subject to visual monitoring by closed circuit TV for safety and security reasons.  (The only other method of visual observation available is for the door to remain open with military police sitting outside the door.).  No oral communications between counsel and detainee will be heard.

G.    At the conclusion of a meeting with a detainee, counsel and translators/interpreters will again be inspected using a metal detector and, if deemed necessary, by physical inspection of their persons.

10

Exhibit B

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                              )
, et al.                      )
                              )
        Petitioners,          )
                              )
    v.                        ) Civil Action No.
                              )
GEORGE W. BUSH,               )
    President of the United   )
    States, et al.,           )
                              )
        Respondents.          )
```

### MEMORANDUM OF UNDERSTANDING REGARDING ACCESS TO CLASSIFIED NATIONAL SECURITY INFORMATION

Having familiarized myself with the applicable statutes, regulations, and orders related to, but not limited to, unauthorized disclosure of classified information, espionage and related offenses; The Intelligence Identities Protection Act, 50 U.S.C. § 421; 18 U.S.C. § 641; 50 U.S.C. § 783; 28 C.F.R. § 17 <u>et seq.</u>; and Executive Order 12958; I understand that I may be the recipient of information and documents that belong to the United States and concern the present and future security of the United States, and that such documents and information together with the methods and sources of collecting it are classified by the United States government.  In consideration for the disclosure of classified information and documents:

(1)  I agree that I shall never divulge, publish, or reveal either by word, conduct or any other means, such classified

EXHIBIT B

documents and information unless specifically authorized in writing to do so by an authorized representative of the United States government, or as expressly authorized by the Protective Order entered in the United States District Court for the District of Columbia in the case captioned _____ v. George W. Bush, No. _____.

(2)  I agree that this Memorandum of Understanding and any other non-disclosure agreement signed by me will remain forever binding on me.

(3) I have received, read, and understand the Protective Order entered by the United States District Court for the District of Columbia in the case captioned _____ v. George W. Bush, No. _____, and I agree to comply with the provisions thereof.

_____          _____
                                         Date


_____          _____
                                         Date

2

Exhibit C

EXHIBIT C

## **ACKNOWLEDGMENT**

The undersigned hereby acknowledges that he/she has read the Protective Order entered in the United States District Court for the District of Columbia in the case captioned _____ v. George W. Bush, No. _____, understands its terms, and agrees to be bound by each of those terms.  Specifically, and without limitation, the undersigned agrees not to use or disclose any protected information or documents made available to him/her other than as provided by the Protective Order.  The undersigned acknowledges that his/her duties under the Protective Order shall survive the termination of this case and are permanently binding, and that failure to comply with the terms of the Protective Order may result in the imposition of sanctions by the Court.


DATED: _____     BY: _____
                              (type or print name)


                         SIGNED: _____

# <u>EXHIBIT 2</u>

To the Motion for Entry of Protective Order

On Behalf of Petitioner,

## ABDUL MATIN

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | **Civil Action Nos.** |
| ) | **02-CV-0299 (CKK), 02-CV-0828 (CKK),** |
| ) | **02-CV-1130 (CKK), 04-CV-1135 (ESH),** |
| ) | **04-CV-1136 (JDB), 04-CV-1137 (RMC),** |
| *In re* **Guantanamo Detainee Cases** ) | **04-CV-1142 (RJL), 04-CV-1144 (RWR),** |
| ) | **04-CV-1164 (RBW), 04-CV-1166 (RJL),** |
| ) | **04-CV-1194 (HHK), 04-CV-1227 (RBW),** |
| ) | **04-CV-1254 (HHK), 04-CV-1519 (JR)** |
| _____ ) | |

## ORDER ADDRESSING DESIGNATION PROCEDURES
## FOR "PROTECTED INFORMATION"

On November 8, 2004, counsel for respondents in these coordinated cases filed a motion requesting the Court to designate as "protected information" the unclassified information contained in the respondents' factual returns to the petitions for writs of habeas corpus that is not filed on the public record. Counsel for certain petitioners filed responses stating that they could not take a position on the respondents' motion until they or a designated representative had an opportunity to review the material that the respondents seek to have declared "protected."

In the interest of the efficient administration of these proceedings, it is hereby

ORDERED that should counsel for respondents in these consolidated cases wish to have the Court deem any information "protected" pursuant to the Court's November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, counsel for respondents shall disclose the information to qualified counsel for petitioners and attempt to reach an agreement regarding the designation of the information prior to filing a motion with the Court. "Qualified counsel" for petitioners means those counsel who have satisfied the necessary prerequisites set forth in the Amended

Protective Order for the viewing of protected information.

It is FURTHER ORDERED that counsel for petitioners shall treat such disclosed information as "protected" unless and until the Court rules that the information should not be designated as "protected."

It is FURTHER ORDERED that counsel for petitioners shall make their best efforts to designate one attorney as a representative to review the information on their behalf and to negotiate with counsel for respondents prior to the filing of any motions to deem information "protected."

With respect to the November 8, 2004 Motion to Designate as "Protected Information" Unclassified Information in Factual Returns to Petitions for Writ of Habeas Corpus That is Not Filed on the Public Record, it is hereby

ORDERED that counsel for respondents shall deliver the information they seek to be deemed "protected" to the Court Security Officer at the designated secured facility on or before November 17, 2004.

It is FURTHER ORDERED that the Court Security Officer shall notify counsel for the petitioners of the location of the secured facility on or before November 12, 2004.

It is FURTHER ORDERED that petitioners' counsel shall review at the secured facility the information at issue and shall notify the Court of their position with respect to the designation of the information on or before November 19, 2004.

IT IS SO ORDERED.
November 10, 2004                          _____/s/_____
                                              JOYCE HENS GREEN
                                          United States District Judge

# EXHIBIT 3

To the Motion for Entry of Protective Order

On Behalf of Petitioner,

## ABDUL MATIN

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | **Civil Action Nos.** |
|  | ) | **02-CV-0299 (CKK), 02-CV-0828 (CKK),** |
|  | ) | **02-CV-1130 (CKK), 04-CV-1135 (ESH),** |
|  | ) | **04-CV-1136 (JDB), 04-CV-1137 (RMC),** |
| *In re* **Guantanamo Detainee Cases** | ) | **04-CV-1144 (RWR), 04-CV-1164 (RBW),** |
|  | ) | **04-CV-1194 (HHK), 04-CV-1227 (RBW),** |
|  | ) | **04-CV-1254 (HHK), 04-CV-1897 (RMC)** |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |

**ORDER SUPPLEMENTING AND AMENDING FILING PROCEDURES**
**CONTAINED IN NOVEMBER 8, 2004 AMENDED PROTECTIVE ORDER**

In its November 8, 2004 Amended Protective Order, the Court set forth procedures for

the filing of documents by counsel in these coordinated cases.  Paragraph 46 governs the filing of

documents by counsel for the petitioners and requires that all filings be first submitted under seal

to the Court Security Officer ("CSO") to determine whether they contain classified or protected

information.  If the CSO, in consultation with the appropriate agency, concludes that a particular

filing does not contain any classified or protected information, ¶ 46 requires the unsealing of the

document by the CSO and the filing of the document in the public record.  If the CSO, in

consultation with the appropriate agency, concludes that a particular filing does contain classified

or protected information, that information is to remain under seal and the unclassified and

unprotected portions of the filing, if any, are to be placed in the public record.  Paragraph 47

governs the filing of classified materials by counsel for the respondents and requires counsel to

submit classified filings under seal to the Court through the CSO.

It has recently come to the Court's attention that some confusion and certain difficulties have arisen with respect to the filing of documents containing classified or protected information. Most of the difficulties have arisen as a result of the nature of the Court's CM/ECF electronic filing system. To clarify and, hopefully, to improve the filing system, it is hereby

ORDERED that the "Procedures For Filing Documents" contained on pages 13 through 14 of the November 8, 2004 Amended Protective Order are modified and supplemented as follows:

All documents filed by a petitioner shall be filed under seal with the Court through the Court Security Officer for determination by the appropriate agency as to whether the documents contain classified or protected information. At the time of making a submission to the CSO, the attorney shall file on the public record in the CM/ECF system a "Notice of Filing" notifying the Court that a submission has been made to the CSO and specifying in general terms the nature of the filing without disclosing any potentially classified or protected information. It is the Court's understanding that the CM/ECF system requires counsel to attach a document to any entry made by them on the system. Accordingly, the document to be attached to the Notice of Filing in the CM/ECF system shall be a one page submission repeating in general terms the nature of the filing without disclosing any potentially classified or protected information and disclosing the date and time the document was delivered to the CSO for her review.

In the event that the CSO informs counsel for a petitioner that a proposed filing does not contain any classified or protected information, counsel shall then promptly file the full submission in the CM/ECF system and counsel shall make specific reference to the earlier docket

2

entry notifying the Court that the document had been submitted to the CSO for review.  The docket entry description shall also state that the CSO has approved of the public filing of the document.  The underlying document filed in the CM/ECF system shall contain a notation in the upper right hand corner of the first page stating "PREVIOUSLY FILED WITH CSO AND CLEARED FOR PUBLIC FILING."

In the event that the CSO informs counsel for a petitioner that a proposed filing does in fact contain some or all classified or protected information, counsel shall then promptly file in the CM/ECF system a version of the document suitable for public viewing.  Unless an entire document is deemed classified or protected, a "version of the document suitable for public viewing" shall mean a document in which the portions of the document containing classified or protected information are redacted.  Such document shall contain a notification in the upper right hand corner of the first page stating "REDACTED VERSION FOR PUBLIC FILING CLEARED BY CSO."   In the event an entire document is deemed classified or protected, a "version of the document suitable for public viewing" shall mean a one page "half sheet" containing the caption of the case, a version of the title of the document that does not disclose classified or protected information, and a brief statement that the CSO has informed counsel that the entire document is classified or protected.  The docket entry description in the CM/ECF system for the document suitable for public viewing shall make specific reference to the earlier docket entry notifying the Court that the document had been submitted to the CSO for review.

Any pleading or other document filed by counsel for the respondents containing classified or protected information shall be filed under seal with the Court through the CSO.  In addition,

counsel for respondents shall file in the CM/ECF system a version of the document suitable for

public viewing as that phrase is defined in the preceding paragraph.


IT IS SO ORDERED.

December 13, 2004                          _____/s/_____
                                                  JOYCE HENS GREEN
                                              United States District Judge

4

# **EXHIBIT 4**

To the Motion for Entry of Protective Order

On Behalf of Petitioner,

## **ABDUL MATIN**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MOHAMED AL-ZARNOUQI *et al.*,    :
                                 :
            Petitioners/         :
            Plaintiffs,          :    Civil Action No.:    06-1767
                                 :
            v.                   :    Document No.:        6
                                 :
GEORGE W. BUSH *et al.*,         :
                                 :
            Respondents/         :
            Defendants.          :

## MEMORANDUM ORDER

### GRANTING THE PETITIONERS' MOTION FOR ENTRY OF A PROTECTIVE ORDER; STAYING THE CASE; AND ORDERING 30 DAYS' NOTICE OF ANY INTENT TO MOVE THE PETITIONERS

This matter comes before the court on the petitioners' motion for entry of a protective

order establishing procedures for access to counsel by detainees in Guantanamo Bay, Cuba

("GTMO"). The petitioners are Yemenese citizens classified as enemy combatants and detained

at GTMO. Pet. for Writ of Habeas Corpus at 2. The respondents oppose the motion, arguing

that this court does not have jurisdiction to consider habeas petitions filed after December 30,

2005. Specifically, the respondents argue that the Detainee Treatment Act of 2005, Pub. L. No.

109-148, tit. X, 119 Stat. 2680, ("DTA") and the Military Commissions Act of 2006, Pub. L. No.

109 --- ("MCA"), when read together with the Supreme Court's decision in *Hamdan v. Rumsfeld*,

548 U.S. --- (2006), divest this court of jurisdiction over habeas petitions filed after the

enactment of the DTA. Resps.' Opp'n at 2-4. For the reasons that follow, the court grants the

petitioners' motion for entry of the protective order, stays the case, and orders 30 days' notice of

any intent to move the petitioners.

The DTA amended the federal habeas statute, 28 U.S.C. § 2241, by adding language giving the D.C. Circuit Court of Appeals "exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant." DTA § 1005(e). In other words, the DTA purports to eliminate this court's jurisdiction over the habeas petitions filed by or on behalf of detainees in GTMO. The MCA further amends the habeas statute (and the DTA) and provides that "no court, justice, or judge shall have jurisdiction" to consider habeas petitions filed by or on behalf of detainees whom the United States has "properly" determined are enemy combatants or who are awaiting such determination. MCA § 7(a).

The D.C. Circuit, however, has not yet decided the scope of the DTA and MCA provisions stripping this court of jurisdiction over the habeas petitions filed by GTMO detainees. *Hicks v. Bush*, --- F. Supp. 2d ----, 2006 WL 2699305, at * 4 (D.D.C. Sept. 21, 2006) and Order, Case No. 05-5062 (D.C. Cir. Oct. 18, 2006). Stated differently, the state of the law in this circuit concerning the habeas rights of GTMO detainees is unclear. "Despite the lack of finality regarding the issues on appeal, however, it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right – a meaningful communication with counsel regarding the factual basis of petitioner's detention. Allowing petitioners to meet with their lawyers is not the type of interim relief that even remotely risks infringing on the Court of Appeals' possible jurisdiction." *Feghoul v. Bush*, 2006 WL 3096856, at *1 (D.D.C. Oct. 31, 2006) (internal quotations and punctuation omitted) (quoting *Said v. Bush*, Civil Action No. 05-2384, slip. op. at 10 (D.D.C. May 23, 2006)). That said, precisely because the current jurisdictional waters are murky, the court also stays the proceedings in this case. *Id.*, at * 1-2 (citing *Wash. Metro. Transit*

2

*Comm'n v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977)).

Lastly, the court is aware of the petitioners' concern that the government may remove the petitioners from GTMO in the near future, Pet. for Writ of Habeas Corpus at 16, thereby divesting the court of jurisdiction (*de facto,* rather than through operation of the law). Such an outcome would abuse the processes now put in place for the purpose of adjudicating matters on their merits. *See Rasul v. Bush*, 542 U.S. 466 (2004). The court cannot allow such a scenario to unfold and will "guard against depriving the processes of justice of their suppleness of adaptation to varying conditions." *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936). Coextensive with the district court's inherent power to stay proceedings is the court's power to craft a stay that balances the hardships to the parties. *Id.* at 255 (noting concerns regarding the stay causing "even a fair possibility . . . [of] damage to some one else"); *see also Clinton v. Jones*, 520 U.S. 681, 707 (1997) (noting that "burdens [to the parties] are appropriate matters for the District Court to evaluate in its management of the case").

Accordingly, it is this 4th day of December, 2006,

**ORDERED** that the petitioners' motion for entry of a protective order is **GRANTED**, and it is

**FURTHER ORDERED** that the case is stayed pending resolution of the appeals pending before the D.C. Circuit Court of Appeals in *In re Guantanamo Detainee Cases* and *Boumediene v. Bush et al.*, and it is

**ORDERED** that the court **ENTERS** by way of reference the protective orders previously entered in the other Guantanamo detainee cases. *E.g.*, Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, *In*

3

*re Guantanamo Detainee Cases*, No. 02-0299 (D.D.C. Oct. 8, 2004); and it is

**FURTHER ORDERED** that the respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, may not remove the petitioners from GTMO unless this court and counsel for petitioners receive thirty days' advance notice of such removal.

**SO ORDERED**.

RICARDO M. URBINA
United States District Judge

4

# __EXHIBIT 5__

To the Motion for Entry of Protective Order

On Behalf of Petitioner,

## ABDUL MATIN

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                              )
**ACHRAF SALIM ABDESSALAM,**                  )
                                              )
      **Petitioner,**          )
    **v.**                            )    **Civil Action No. 06-1761 (ESH)**
                                              )
**GEORGE W. BUSH,** *et al.*,                 )
                                              )
      **Respondents.**         )
_____     )

## <u>ORDER</u>

      Petitioner Achraf Salim Abdessalam is a Libyan citizen classified as an enemy combatant and detained by the United States in Guantanamo Bay, Cuba.  (Pet. at 2).  Petitioner filed a petition for writ of *habeas corpus* on October 16, 2006.  Before the Court is petitioner's motion for entry of the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, issued by Judge Joyce Hens Green in *In re Guantanamo Detainee Cases*, No. 02-cv-0299, *et al.*  Because entry of the relevant orders is essential to petitioners' representation, *cf. Aminullah v. Bush*, No. 05-cv-1237 (D.D.C. Aug. 10, 2006) (post-DTA order requiring the production of a factual return as essential to petitioner's "effective representation" in pending proceedings), the Court has uniformly entered the orders in these cases, *see*, *e.g.*, *Kurnaz v. Bush*, No. 04-cv-1135 (D.D.C. Apr. 12, 2005).

      Respondents oppose petitioner's motion, asserting that the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680, ("DTA") and the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA") divest this Court of jurisdiction over *habeas* petitions filed after the enactment of the DTA on December 30, 2005.  In two pending cases, *Boumediene v. Bush* and *In re Guantanamo Detainee Cases*, the D.C. Circuit will address

the effect of the MCA and DTA on district court jurisdiction over cases such as this one.

Briefing was complete in these cases on November 20, 2006, but the D.C. Circuit has not yet

issued an opinion.  The law in this circuit regarding the effect of the jurisdiction-stripping

provisions of the MCA and DTA therefore remains unclear.  "Despite the lack of finality

regarding the issues on appeal, however, it is hardly sensible to withhold or frustrate something

that no one doubts is petitioner's right – a meaningful communication with counsel regarding the

factual basis of petitioner's detention. Allowing petitioners to meet with their lawyers is not the

type of interim relief that even remotely risks infringing on the Court of Appeals' possible

jurisdiction."  *Feghoul v. Bush*, 2006 WL 3096856, at *1 (D.D.C. Oct. 31, 2006) (internal

quotations and punctuation omitted) (quoting *Said v. Bush*, Civil Action No. 05-2384, slip. op. at

10 (D.D.C. May 23, 2006)).

      Accordingly, it is hereby

      **ORDERED** that petitioner's motion for entry of a protective order [#5] is **GRANTED**;

and it is

      **FURTHER ORDERED** that the Court **ENTERS** by way of reference the November 8,

2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United

States Naval Base in Guantanamo Bay, Cuba; the November 10, 2004 Order Addressing

Designation Procedures for "Protected Information;" and the December 13, 2004 Order

Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended

Protective Order, each issued by Judge Joyce Hens Green in *In re Guantanamo Bay Detainee*

*Cases*, No. 02-cv-0299, *et al.*

**SO ORDERED**.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   December 22, 2006

# EXHIBIT 6

To the Motion for Entry of Protective Order

On Behalf of Petitioner,

## ABDUL MATIN

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FADHEL HUSSEIN SALEH HENTIF,**

**Petitioner,**

v.

**GEORGE W. BUSH, et al.,**

**Respondents/Defendants.**

Civil Action 06-01766 (HHK)

## ORDER ENTERING AMENDED PROTECTIVE ORDER

Before the court is petitioner's emergency motion to enter the Amended Protective Order from *In re Guantanamo Bay Detainee Cases* [#3].  Upon consideration of the motion and the record of this case, it is this 21st day of November, 2006, hereby

**ORDERED,** that petitioner's emergency motion to enter the Amended Protective Order from *In re Guantanamo Bay Detainee Cases* [#3] is **GRANTED**; and it is further

**ORDERED,** that the following orders, entered in *In re Guantanamo Detainee Cases*, Civ. Nos. 02-0299, 02-0828, 02-1130, 04-1135, 04-1136, 04-1137, 04-1144, 04-1164, 04-1194, 04-1227, 04-1254, 04-1519 (D.D.C.,  J. Green), are hereby incorporated by reference: "Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba," dated November 8, 2004; "Order Addressing

Designation Procedures for 'Protected Information,'" dated November 10, 2004; and "Order

Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended

Protective Order," dated December 13, 2004.


                                    Henry H. Kennedy, Jr.
                                    United States District Judge

# EXHIBIT 7

To the Motion for Entry of Protective Order

On Behalf of Petitioner,

## ABDUL MATIN

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IYOB MURSHAD ALI SALEH and
MURSHAD ALI SALEH,**

        **Petitioners/Plaintiffs,**

        **v.**

**GEORGE W. BUSH, et al.,**

        **Respondents/ Defendants.**

**Civil Action 06-01765 (HHK)**

## ORDER

Before the court is petitioners' emergency motion to enter the Amended Protective Order from *In re Guantanamo Bay Detainee Cases* [#3]. Upon consideration of the motion and the record of this case, it is this 17th day of November, 2006, hereby

**ORDERED,** that petitioners' emergency motion to enter the Amended Protective Order from *In re Guantanamo Bay Detainee Cases* [#3] is **GRANTED**; and it is further

**ORDERED,** that the following orders, entered in *In re Guantanamo Detainee Cases*, Civ. Nos. 02-0299, 02-0828, 02-1130, 04-1135, 04-1136, 04-1137, 04-1144, 04-1164, 04-1194, 04-1227, 04-1254, 04-1519 (D.D.C., J. Green), are hereby incorporated by reference: "Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba," dated November 8, 2004; "Order Addressing

Designation Procedures for 'Protected Information,'" dated November 10, 2004; and "Order

Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended

Protective Order," dated December 13, 2004.


                                        Henry H. Kennedy, Jr.
                                        United States District Judge

# __EXHIBIT 8__

To the Motion for Entry of Protective Order

On Behalf of Petitioner,

## **ABDUL MATIN**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SABAR LAL, *et al.*,

      Petitioners,

     v.

GEORGE W. BUSH, President of the United States, *et al.*,

      Respondents.

Civil Action No. 06-1763 (CKK)

**ORDER**
(October 29, 2006)

This case was filed on October 16, 2006. While awaiting a relevant ruling from the United States Court of Appeals for the District of Columbia Circuit, this Court will stay the present case, and shall apply the amended protective order issued by Judge Joyce Hens Green in *In re Guantanamo Bay Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), in the coordinated cases to this action, as supplemented by later orders entered by Judge Green as applied in *Al Odah v. United States*, 02-CV-828 (CKK), on November 10, 2004 [144] and on December 13, 2004 [167]. Furthermore, the Court shall require the Government to be prepared to file factual returns in this case within 30 calendar days of the resolution of the relevant cases on appeal.

Accordingly, it is this 29th day of October, 2006, hereby

ORDERED that the amended protective order and supplementary orders issued by Judge Green are applied to this case; it is further

ORDERED that this case is STAYED pending a resolution of the relevant issues by the

Court of Appeals; it is further

ORDERED that the Government shall file factual returns with respect to Petitioner Lal within 30 calendar days of a ruling on the relevant cases from the Court of Appeals.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

# EXHIBIT 9

To the Motion for Entry of Protective Order

On Behalf of Petitioner,

## ABDUL MATIN

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
ABDUR RAZAKAH*, et al.*,             )
                                    )
          Petitioners,              )
                                    )
     v.                             )     Civil Action No. 05-2370 (EGS)
                                    )
GEORGE W. BUSH, *et al*.             )
                                    )
          Respondents.              )
_____)

<u>**MEMORANDUM OPINION AND ORDER**</u>

On December 19, 2006, Petitioners Abdur Razakah and Ahmad
Doe [Tourson] -- citizens of the Xinjiang Autonomous Region of
China -- requested that the Court issue an order requiring
respondents to provide a factual return setting forth the basis
for their detention.  Petitioners have been detained at the
United States Naval Station in Guantanamo Bay ("Guantanamo")
since 2002.  In December 2005, petitioners filed a petition for
habeas corpus challenging the legality of their confinement.
Petitioners claim that respondents have refused to produce a
factual return or any other information justifying their
detention since petitioners filed their habeas petition.  For the
reasons stated by the Court in *Al-Ghizzawi v. Bush*, Civil No. 05-
2378 (D.D.C. Aug. 9, 2006) (Mem. Op. and Order) and *Kahn v. Bush*,
Civil No. 05-1001 (D.D.C. Aug. 10, 2006) (Mem. Op. and Order),
the Court grants the Motion for Production of Factual Return.

Respondents do not dispute petitioners' right to notice of
the factual basis for their detention or to be represented by

counsel to challenge the legality of their detention.  Rather, respondents argue that this Court should deny the request for an order requiring a factual return because the Court lacks jurisdiction over the habeas petition under the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2600, and the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, 119 Stat. 2680.  The D.C. Circuit is currently considering challenges to the MCA and DTA and has not yet determined whether this Court has in fact been stripped of jurisdiction over the habeas claims of Guantanamo detainees.  This is not an adequate reason to deny petitioners' motion because a factual return "will obviously be needed regardless of the resolution of the jurisdictional question."  *Kahn*, Civil No. 05-1001 (D.D.C. Aug. 10, 2006) (Mem. Op. and Order) ("Without access to the information contained within a factual return, petitioner's counsel cannot offer anything approaching effective representation in these proceedings."); *see also Feghoul v. Bush*, Civil No. 06-618 (D.D.C. Oct. 31, 2006) (Mem. Order) ("Despite the lack of finality regarding the issues on appeal, . . . it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right -- a meaningful communication with counsel regarding the factual basis of petitioner's detention.").

Accordingly, it is hereby **ORDERED** that petitioners' Motion for Production of Factual Return is **GRANTED**; and it is

**FURTHER ORDERED** that respondents shall provide factual returns to the Court and petitioners' counsel by **March 30, 2007.** The factual returns shall provide all information necessary for a determination of whether Abdur Razakah and Ahmad Doe [Tourson] are properly subject to detention by the United States.

**IT IS SO ORDERED.**


**Signed:  Emmet G. Sullivan**
**United States District Judge**
**January 23, 2007**

# **EXHIBIT 10**

To the Motion for Entry of Protective Order

On Behalf of Petitioner,

## **ABDUL MATIN**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABDUL HAMID ABDUL SALAM
AL-GHIZZAWI,

Petitioner,

v.

GEORGE W. BUSH, et al.,

Respondents.

Civil Action No. 05-2378 (JDB)

## MEMORANDUM OPINION & ORDER

Abdul Hamid Abdul Salam Al-Ghizzawi, a citizen of Libya who is detained by the

United States at the United States Naval Station in Guantanamo Bay, Cuba ("Guantanamo") and

who has challenged the legality of his confinement by a petition for a writ of habeas corpus, has

requested, through counsel, an order compelling respondents to provide him with a "factual

return" detailing the basis for his confinement.  The Court has held this motion in abeyance for

more than five months, in anticipation of rulings by higher courts relating to whether detention of

the Guantanamo detainees violates any source of law and whether recent legislation divested this

Court of jurisdiction to entertain habeas actions such as Al-Ghizzawi's.  See Detainee Treatment

Act of 2005 ("DTA"), Pub. L. No. 109-148, § 1005(e), 119 Stat. 2680, 2742 (providing that "no

court, justice, or judge shall have jurisdiction to hear or consider ... an application for a writ of

habeas corpus filed by or on behalf of an alien detained by the Department of Defense at

Guantanamo Bay, Cuba" and vesting in the United States Court of Appeals for the District of

Columbia Circuit "exclusive jurisdiction to determine the validity of any final decision of a

Combatant Status Review Tribunal [('CSRT')] that an alien is properly detained as an enemy combatant").

Although the Supreme Court recently held that the DTA's *jurisdiction-stripping* provision does not apply to habeas cases, such as this one, that were "pending on the date of the DTA's enactment," Hamdan v. Rumsfeld, 126 S. Ct. 2749, 2769 n.15 (2006), it left unresolved the question whether the DTA's *jurisdiction-vesting* provisions might nonetheless limit this Court's power over pending habeas cases, see id. at n.14 ("There may be habeas cases that were pending in the lower courts at the time the DTA was enacted that ... qualify as challenges to 'final decision[s]' within the meaning of subsection (e)[] .... We express no view about whether the DTA would require transfer of such an action to the District of Columbia Circuit.").[1] Respondents have taken the position that the "exclusive jurisdiction" of the D.C. Circuit under the DTA precludes this Court from taking any action with respect to petitioner's motions, and they have urged the Court to defer ruling on such motions until the D.C. Circuit determines the extent of its (and hence this Court's) jurisdiction over claims brought by Guantanamo detainees.

The Court is keenly aware that, as a court of limited jurisdiction, it may not adjudicate cases or controversies unless it has assured itself of its authority to do so -- and, in keeping with that fundamental principle, the Court has steadfastly refrained from taking substantive action in these cases while threshold issues such as jurisdiction have been pending in the related appeals. But the present situation also calls to mind the admonition of Voltaire that "[t]he best is the enemy of the good." See Nat'l Ass'n of Regulatory Utility Comm'rs v. FCC, 737 F.2d 1095, 1147

_____

[1] Indeed, the D.C. Circuit panel before which the appeals are pending recently ordered supplemental briefing on this jurisdictional issue.

(D.C. Cir. 1984) (quoting Dictionnaire Philosophique (Dramatic Art) (1794) ("Le mieux est l'ennemi du bien.")).  Because the Court has concluded that the outcome sought by petitioner through the present motion would ultimately be achieved regardless of the disposition of the jurisdictional question, and because this motion does not approach the merits of petitioner's challenge to the legality of his detention, the Court will rule on the motion without resolving respondents' jurisdictional challenge.  To do otherwise could unnecessarily prejudice petitioner's ability to timely and meaningfully communicate with counsel and advance his claims, given the logistical difficulties and limitations associated with attorney-client communications in this unique detention setting.

The Court has previously considered -- and granted -- motions by other Guantanamo detainees who sought production of their factual returns (which respondents describe as the records of petitioners' proceedings before the CSRT), and the Court will resolve this motion in a manner consistent with its prior rulings.  Because "the factual return[] appear[s] necessary for ... counsel effectively to represent petitioner[]" and "even initial conversations [between counsel and client] may be very difficult without access to that basic factual information," Al-Anazi v. Bush, 370 F. Supp. 2d 188, 200 (D.D.C. 2005), the Court will require respondents to produce the factual return to petitioner's counsel -- consistent with any applicable conditions imposed by this Court's protective orders -- within sixty days.  In ordering production of the factual return, the Court takes note of the fact that, even if respondents' interpretation of the DTA's exclusive jurisdiction provision is correct, petitioner would be entitled to a review by the D.C. Circuit of "the status determination of the Combatant Status Review Tribunal," see Pub. L. No. 109-148, § 1005(e)(2)(C)(i), 119 Stat. 2680, 2742, and completion of any such judicial review would

necessitate that petitioner's counsel have access to the CSRT records. Indeed, respondents have indicated that they "do not anticipate objecting to production of petitioners' CSRT records for review in Court of Appeals' proceedings pursuant to section 1005(e)(2)." Resp'ts' Resp. to Court's Aug. 3, 2006, Order at 2.[2] Furthermore, it is possible that resolution of the jurisdictional question would require fact-finding -- that is, a determination whether this habeas petition is, in actuality, a challenge to "the validity of any final decision of a Combatant Status Review Tribunal," within the meaning of the DTA, and thus properly within the exclusive jurisdiction of the D.C. Circuit. If such fact-finding were necessary, production of the factual return to petitioner's counsel might similarly be imperative. Hence, the Court can see no compelling reason to further delay production of this essential information to petitioner's counsel, beyond providing respondents with sufficient time to conduct a "review of information in the return[] ... to ensure that any information disclosed to counsel is in accordance with all applicable statutes, regulations and Executive Orders." See Resp'ts' Status Report in Resp. to Court's July 19, 2006, Minute Order at 6.

Accordingly, it is this 9th day of August, 2006, hereby

ORDERED that [5] petitioner's motion to compel production of the government's factual return is GRANTED IN PART and DENIED IN PART;[3] and it is further

ORDERED that respondents shall transmit factual returns to the Court and petitioner's counsel within sixty (60) days of the date of this order -- that is, by not later than October 9,

---

[2] In other words, respondents have no non-jurisdictional basis for opposing production of the factual return.

[3] Insofar as petitioner's motion also seeks entry of protective orders, the motion is denied as moot in light of this Court's Order of June 13, 2006.

-4-

2006.

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Copies to:

H. Candace Gorman
LAW OFFICE OF H. CANDACE GORMAN
542 South Dearborn, Suite 1060
Chicago, IL 60605
Email: hcgorman@igc.org

    *Counsel for petitioner Al-Ghizzawi*

Terry Marcus Henry
UNITED STATES DEPARTMENT OF JUSTICE
P.O. Box 883
20 Massachusetts Avenue, NW, Suite 7144
Washington, DC 20044
Email: terry.henry@usdoj.gov

    *Counsel for respondents*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    :
**ABDUL MATIN,**                                    :
                                                    :
**MOHAMMED YOUNIS,**                                :
    **as Next Friend of Abdul Matin,**    :
                                                    :
*Petitioners*,                                      :
                                                    :
      **v.**                   :     **Civil Action No. 06-cv-01679**
                                                    :     **(RMU)**
                                                    :
**GEORGE W. BUSH, et al.,**                         :
                                                    :
*Respondents*.                                      :
_____:

### [PROPOSED] ORDER

Having considered Petitioner's Motion For Entry Of Protective Order And To Compel

Production Of Factual Return, the opposition filed thereto, and any reply, as well as the entire

record in this case, it is hereby

ORDERED that the Court ENTERS by way of reference the protective orders previously

entered in the other Guantanamo detainee habeas cases, *e.g.,* (1) the Amended Protective Order

and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo

Bay, Cuba, first issued on November 8, 2004, (344 F. Supp. 2d 174 (D.D.C. 2004)); (2) the

Order Addressing Designation Procedures for "Protected Information," first issued on November

10, 2004; (3) the Order Supplementing and Amending Filing Procedures Contained in November

8, 2004 Amended Protective Order, first issued on December 13, 2004, all in *In re Guantánamo*

*Bay Detainee Cases* by then-Coordinating Judge Joyce Hens Green attached; and it is

22318825v3

FURTHER ORDERED that Respondents shall file a factual return regarding Petitioner within thirty days of this order.

SO ORDERED.

_____
Ricardo M. Urbina
United States District Judge

Dated:_____